# McClintock Trust

*Ben R. Jones, III*, for petitioner.

DALESSANDRO, *J.*, January 29, 1980—

## NATURE OF PROCEEDINGS

This matter is before the court on a petition for declaratory judgment.

## HISTORY AND FACTS

The Wyoming National Bank of Wilkes-Barre is trustee of the Andrew Todd McClintock Memorial Trust, a trust created under the laws of the Commonwealth of Pennsylvania. On August 20, 1979, the bank filed a petition for declaratory judgment, seeking to have the court determine whether the manner in which the bank sold certain shares of Wyoming National Bank stock, representing a portion of the principal account of the trust, was reasonable, proper and in accordance with Pennsylvania law.

A hearing on the petition was held on October 4, 1979, after notice was duly given to all interested parties. Although none of those parties personally

appeared at the hearing, several sent letters to counsel for the bank. These letters were placed on record at the hearing. In their letters Mrs. Ann Dahl and Mr. Robert Davenport expressed no opinion on the stock transaction. Mr. John Ahlfors and Mrs. Jean Aldridge were opposed to the sale of stock. The Osterhout Free Library and the Pennsylvania Department of Justice did not object to the sale. The Comptroller of the Currency, through J. Arnold Bair, Regional Director for Trust Operations, refused to appear at the hearing, despite the fact that the Comptroller's decision to cite Wyoming National Bank led to the initiation of these proceedings. Two witnesses testified on behalf of the bank. Shortly after January 1, 1980, the court received a copy of the transcript of the hearing.

From the record we make the following findings of fact. Joseph L. Petz, the first witness at the hearing, is the senior vice-president in charge of the trust department at the bank. He joined the bank in January, 1978, after serving in responsible positions in banks in Cincinnati and Buffalo. As part of Wyoming National Bank's total investment program Mr. Petz reviewed the assets of the McClintock Trust in September, 1978. This was his first opportunity to inspect the account. He determined, on the basis of professional investment principles, that certain shares of stock, among them 1,936 shares of Wyoming National Bank stock, should be sold. Mr. Petz then contracted with Elkins, Stroud, Supplee & Co., a private brokerage firm in Wilkes-Barre, for the purchase of the stock by the firm for its own account.

This transaction was completed on September 13, 1978. As a result of the sale, the trust realized a gain in excess of $62,000. This sum was reinvested

in stocks with a similar yield but a greater potential for capital appreciation. Both Mr. Petz and Bernard Harris, (a general partner in Elkins, Stroud and the second witness at the hearing) believed that, given various market factors and considerations, the method chosen for the sale of the Wyoming National Bank stock from the trust assets was the most suitable one.

After receiving the stock Elkins, Stroud proceeded to resell it to private purchasers at a gain of two dollars per share (purchased at $43 per share, net; sold at $45 per share, net). Names of prospective customers were obtained from lists kept by the firm of persons who had previously expressed an interest in bank stock. Some of the purchasers were individuals or family members of individuals closely connected with Wyoming National Bank, including two members of the board of directors. A complete list of the names of stock purchasers was presented to the court after the hearing, pursuant to the court's request during the hearing. The list has been made a part of the record. Mr. Petz testified that 562 shares of stock, or approximately 29 percent of the total number of shares sold to Elkins, Stroud, were resold to individuals or family members or individuals associated with the bank. Thus, the transactions which the Comptroller of the Currency has found to be objectionable involve less than a third of the block of stock originally sold by the bank to the broker.

When these stocks were originally sold by the bank to Elkins, Stroud, Mr. Petz had no knowledge that they would eventually be resold to Wyoming National Bank officials. In fact, he did not become aware of the subsequent transactions until the matter was brought to his attention by the Office of

the Comptroller of the Currency. Federal authorities have since cited the bank for violations of Federal banking regulations concerning fiduciary obligations. The government has requested the bank to reverse the sale of the Wyoming National Bank stock at no loss to the McClintock Trust or to obtain approval of the sale by the court.

## DISCUSSION AND LAW

Declaratory relief is available to determine any question arising in the administration of a trust: 42 Pa.C.S.A. §7535(3). We are satisfied that the issue presented for consideration at bar is an appropriate one for declaratory judgment proceedings. In our view, this case sets forth not abstract questions of law or issues merely academic in nature, but rather deals with an actual controversy between Wyoming National Bank and the Office of the Comptroller of the Currency regarding an important matter of trust administration. We will, therefore, proceed to the merits of the case.

The Federal regulation under which the bank has been cited prohibits a national bank from transferring to its directors, officers, employes, or other interested individuals any property held by the bank as fiduciary: 12 C.F.R. §9.12(b). A subsequent sale by a broker of stock of a trustee bank which, acquired the stock from a trust account, to a bank director, officer or employe within a precipitous length of time from acquisition by the broker is presumed to be in violation of the regulation: O.C.C. Precedent No. 9.3042, 5 CCH Fed. Banking Law Rep. ¶59,241. However, 12 C.F.R. §9.12(b)(1) also states that a transfer of bank stock from a fiduciary account to a bank officer is not unlawful if such a transfer is authorized by the trust instru-

ment or by court order or by local law. The issue to be decided here is whether the transfer of the Wyoming National Bank stock was unobjectionable under Pennsylvania law so as to rebut the presumption under O.C.C. Precedent No. 9.3042 of the irregularity of such a transaction.

There has long been a rule in Pennsylvania as well as other jurisdictions forbidding self-dealing by a trustee. See, e.g., Comerford Estate, 388 Pa. 278, 130 A. 2d 458 (1957). Self-dealing by a trustee is not limited to a sale of trust assets to himself but includes any situation in which he has a substantial personal interest in the subject of the transaction that might materially affect his judgment: Pew Memorial Trust No. 1, 5 D. & C. 3d 627, 664 (1977). For the reasons which follow, the court does not believe that Wyoming National Bank violated its fiduciary obligations to the McClintock Trust.

If there were any evidence in the record tending to show that Wyoming National Bank trust department officials knew or should have known that these securities would eventually find their way into the hands of certain bank directors and their families, we would not hesitate to withhold our imprimatur from this stock transaction. Those facts would lead us to conclude that the prohibition against self-dealing had been violated inasmuch as a substantial interest in a transaction, regardless of adequacy of consideration or honesty of intentions, will render the transaction voidable: Comerford Estate, supra.

However, we can point to no evidence which suggests that anything other than professional judgment based on an analysis of market conditions was a factor in the decision to sell the stock to Elkins, Stroud. Mr. Petz, after reviewing the assets of the trust, determined that certain securities

should be sold and made the appropriate arrangements. He did not inform friends or associates that bank stock would be available from Elkins, Stroud or that he knew that the brokerage firm would contact bank officials concerning this offering. In the absence of evidence tending to prove self-dealing by Wyoming National Bank as a corporate trustee or an express provision in the trust instrument itself concerning the sale of Wyoming National Bank stock, the court lacks authority to overturn the transaction in dispute here. The declaratory relief requested by petitioner will therefore be granted.

## ORDER

It is hereby ordered, adjudged and decreed that the manner in which petitioner sold privately the shares of capital stock of the Wyoming National Bank of Wilkes-Barre, being a portion of the principal account of the Andrew Todd McClintock Memorial Trust, was, under the circumstances and evidence presented to the court, reasonable, proper and in accordance with the laws of the Commonwealth of Pennsylvania governing the sale of trust assets by a Pennsylvania fiduciary.